IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRIS FOSTER,                              *

      Plaintiff,                        *

v.                                        *          Civil No. TJS-10-1933

UNIVERSITY OF MARYLAND                    *
EASTERN SHORE,
                                          *
    Defendant.

               *      *      *      *      *      *

**MEMORANDUM OPINION**

This matter is before the Court[1] on Defendant University of Maryland Eastern Shore's

("UMES") Motion for Reconsideration ("Motion") (ECF No. 62).  In its Motion, UMES moves

for the Court to reconsider its decision denying summary judgment as to Plaintiff Iris Foster's

("Ms. Foster") Title VII retaliation claim.  The Court has considered the submissions of the

parties (ECF Nos. 62, 64, 66, 67, 68, 69 70 & 74) and has had the benefit of the parties' oral

arguments.  *See* ECF No. 75.  UMES's Motion for Reconsideration is GRANTED.  For the

reasons set forth below, UMES is entitled to summary judgment on Ms. Foster's Title VII

retaliation claim.

---

[1] This case was previously assigned to then-Chief Magistrate Judge Paul W. Grimm with the consent of the parties for all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).  ECF Nos. 8, 11 & 42.  On December 20, 2012, after Judge Grimm's confirmation as a United States District Judge, this case was reassigned to me.  The Court incorporates the facts viewed in the light most favorable to Plaintiff as set forth in Judge Grimm's Opinion.

I.     **BACKGROUND**

A.     **Factual History**

This case concerns UMES's termination of Ms. Foster from her position as a University Police Officer II in UMES's Department of Public Safety.[2]  ECF No. 1.  Ms. Foster was hired "on a six-month probationary period" on April 9, 2007.  ECF No. 1 ¶ 1.  Even before she was hired by UMES, Ms. Foster was subject to improper sexual remarks and harassment by her co-worker Rudolph Jones ("Jones"), and this behavior continued through the first month of her employment.  ECF No. 55 at 7.  Ms. Foster first complained to Assistant Director of Public Safety Lawrence Wright, Jr. ("Wright") on May 8, 2007.  *Id.* at 8.  Thereafter, she complained to Director of Human Resources and Equity Officer Marie Billie.  *Id.*  UMES conducted an investigation and found that Ms. Foster's complaints had merit.  *Id.*  About one month after it received Ms. Foster's complaint, UMES reassigned Jones to another location where he would not have contact with Ms. Foster and disciplined him.  *Id.* at 9.

On August 27, 2007, UMES extended Ms. Foster's probationary period for an additional six months, as recommended by UMES's "Policy on Probation for Nonexempt Employees."  ECF Nos. 41-3 & 55 at 10.  On September 6, 2007, Ms. Foster was injured and was limited to performing no more than "light duty."  ECF No. 55 at 10.  UMES removed Ms. Foster from duty entirely, and thereafter denied her request to attend a one-day in-service training session.  ECF No. 55 at 11.  On October 29, 2007, UMES notified Ms. Foster that she would be "rejected on probation"—tantamount to termination—effective November 29, 2007.  ECF No. 55 at 11.  UMES stated that it "had some concerns about [Ms. Foster's] work performance," her use of

---

[2] Judge Grimm's Memorandum Opinion contains a fuller factual history than is necessary for the purposes of the Court's decision on UMES's Motion for Reconsideration.  *See* ECF No. 55 at 7-13.

"almost all of her accrued sick leave and personal leave" and her inflexibility with regard to scheduling.  *Id.*

B.    **Procedural History**

On December 4, 2012, the Court granted summary judgment to UMES on Count I of her Complaint, which alleged a hostile work environment and termination based on gender in violation of Title VII.  ECF No. 55.  The Court denied UMES's motion for summary judgment on Count II of Ms. Foster's Complaint, which alleged Title VII retaliation.  In doing so, Judge Grimm found that Ms. Foster had presented "sufficient evidence of 'retaliatory animus' to generate a jury question regarding whether [her] termination was *causally related* to her engaging in the protected activity of complaining about Jones's behavior."  ECF No. 55 at 32 (emphasis added).  Having found that Ms. Foster established a *prima facie* retaliation claim, Judge Grimm went on to note that the evidence Ms. Foster offered to prove that UMES's proffered reasons for her termination were pretextual was "sufficient to generate a jury question on pretext," even though the evidence was "somewhat lacking."  ECF No. 55 at 37.

In light of the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), UMES has moved for the Court to reconsider its decision denying summary judgment on Count II, Ms. Foster's Title VII retaliation claim.  In *Nassar*, the Supreme Court examined which causation standard applies to Title VII retaliation claims.  *Id.*  The Court noted that given the "ever-increasing frequency" with which retaliation claims are filed, resolution of the causation standard applicable to such claims was a question of "central importance to the fair and responsible allocation of resources in the judicial and litigation systems."  *Id.* at 2531.  The Court noted that if a lessened causation standard were found to apply to such claims, it "would make it far more difficult to dismiss dubious claims at

the summary judgment stage." *Id*. at 2532.   The Court held that "Title VII retaliation claims must be proved according to the traditional principles of but-for causation" and require "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 2533.   To establish a "but-for" causal relation, Ms. Foster must now prove that "the desire to retaliate was the 'but-for' cause" of her termination. *Id.* at 2528; *see Mallik v. Sebelius*, No. PWG-12-1725, 2013 WL 4559516 (D. Md. Aug. 28, 2013) ("This means that the employer would not have taken the adverse employment action against the plaintiff if the employer were not trying to retaliate against the plaintiff for engaging in a protected activity.").

Previously, the Court found that Ms. Foster had put forth evidence sufficient to show a "causal relationship" between her protected activity and her termination.   Under *Nassar*, however, the Supreme Court has clarified that retaliation claims are subject to a heightened standard of "but-for" causation.   This is a higher standard of causation than Judge Grimm employed in his pre-*Nassar* Memorandum Opinion.   Because there has been an intervening change in controlling law, reconsideration of the Court's previous summary judgment decision is appropriate.   *See* Fed. R. Civ. P. 54(b); *Quigley v. United States*, 865 F. Supp. 2d 685, 700 (D. Md. 2012) (citing with approval *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565–66 (M.D.N.C. 2005) ("Courts will reconsider an . . . order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice.")).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Dash v. Mayweather*, No. 12-1899, 2013 WL 5365967 (4th Cir. Sept. 26, 2013). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). In reviewing a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. *Ricci v. DeStafano*, 557 U.S. 557, 585 (2009).

If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.* (citing *Anderson*, 477 U.S. at 255; *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817–18 (4th Cir. 1995)).  Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251.  Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

III.     **RECONSIDERATION IN LIGHT OF** *NASSAR*

Since the June 24, 2013 decision by the Supreme Court, a number of courts have applied the *Nassar* standard to Title VII retaliation claims, and have concluded that it is difficult for a reasonable jury to find "but-for" causation where the evidence is, as Judge Grimm noted in this case, "somewhat lacking."  *See Finnie v. Lee Cnty., Miss.*, No. 12-60623, 2013 WL 4852244 (5th Cir. Sept. 12, 2013) (finding that no reasonable juror could "conclude that [plaintiff's] filing of an EEOC claim was the "but-for" cause of her termination, that, had she not filed the claim, she would have remained in her position at the Lee County Detention Center"); *Verma v. Univ. of Pennsylvania*, No. 12-2799, 2013 WL 4010237 (3d Cir. Aug. 7, 2013) ("Contrary to Appellant's assertions, she has presented no evidence that suggests any causal connection between her allegations of discrimination and her termination, let alone evidence to suggest that such activity was the but-for cause of her termination."); *Coleman v. Jason Pharm.*, No. 12-11107, 2013 WL 5203559 (5th Cir. Sept. 17, 2013) ("Coleman has fallen well short of showing 'a conflict in substantial evidence' on the question of whether a retaliatory motive was the but-for cause of her termination."); *Huggins v. N.C. Dep't of Admin.*, No. 5:10-CV-414-FL, 2013 WL 5201033 (E.D.N.C. Sept. 13, 2013) (granting defendant's motion for summary judgment as to retaliation claim because plaintiff's "scant evidence with respect to causation" fell "short of proving, by a preponderance of the evidence, that retaliation was the 'but-for' cause of her being placed on investigatory leave and subsequently terminated").

Other courts have reconsidered their decisions denying summary judgment for Title VII retaliation claims in light of *Nassar*.  In *Hubbard v. Georgia Farm Bureau Mut. Ins. Co.*, No. 5:11-cv-290, 2013 WL 3964908 (M.D. Ga. July 31, 2013), the court reconsidered its decision denying summary judgment with respect to two retaliation claims.  As to the first claim, the court

granted summary judgment on reconsideration, noting that while certain "evidence, combined with the temporal proximity of less than three months, was enough to satisfy a 'motivating factor' causation standard, it is not enough to satisfy the 'but-for' causation standard." *Id*. at *1. With respect to the second claim, however, the court denied summary judgment, stating that an "abrupt termination only three weeks" after a complaint of sexually offensive conduct, combined with evidence that the employer "made no effort to investigate" the complaint, and the existence of "no evidence . . . showing Plaintiff exhibited any unprofessional or insubordinate actions or behavior warranting any kind of reprimand after she made this complaint" was sufficient to allow a reasonable jury to find that but-for her complaint, the plaintiff would not have been terminated. *Id.* at *2.

In *Crowell v. Wisconsin Bd. of Regents*, No. 12-0295, 2013 WL 3724949 (W.D. Wis. July 12, 2013), the court considered facts quite unlike those in Ms. Foster's case.  There, an employee complained of racial discrimination and was "almost immediately thereafter" subject to discipline that culminated in her termination.  The court found "that for *nine* years" the employee was not disciplined the tardiness and absence issues that purportedly led to her termination.  The court found that "but-for" the employee's complaints "she would have continued to escape scrutiny and discipline for her absenteeism and poor performance," as she had done for the previous nine years.  *Id*.

Recently, the Seventh Circuit succinctly stated how a plaintiff's retaliation claim may survive summary judgment.  *Hobgood v. Illinois Gaming Bd.*, 722 F.3d 1030 (7th Cir. 2013). *Hobgood* noted that it is rare for a plaintiff to be able to point to direct evidence of causation ("something akin to an admission from the [employer] that it took action against [the plaintiff] because of his protected activity").  *Id.*  Plaintiffs are more often able to piece together a

"convincing mosaic of circumstantial evidence" that "when taken as a whole and viewed in a light favorable [to the non-movant], could convince a reasonable jury that [the plaintiff] was the victim of unlawful retaliation."   *Id.* at 1038 (internal quotation omitted) (noting that this circumstantial evidence might include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action").   While the cases "in which a plaintiff does not have a convincing mosaic, but only one 'bit' or 'piece' . . . are legion," a court evaluating a plaintiff's "mosaic of circumstantial evidence" must consider the evidence as a whole.   *Id.*

Ms. Foster fails to satisfy her burden with regard to her retaliation claim under the *Nassar* standard.   Several important facts are not in dispute.   First, Ms. Foster complained about Jones's behavior in early May 2007, but was not notified that her probation would be extended until late August 2007, or that she would be terminated until October 2007, more than five months[3] after she made her complaint.   Second, less than one month after Ms. Foster's complaint, Jones was disciplined, removed as supervisor of the security guards, transferred to another location on campus where he would not have contact with Ms. Foster, required to attend sexual harassment training and required to sign a "Last Chance Agreement" that provided for his termination should other issues with Jones arise.   ECF 55 at 9.   Each of these undisputed facts weighs against a

---

[3] For the reasons set forth in Judge Grimm's Opinion, Ms. Foster could not rely on temporality to establish the necessary causal link even under the lower causal standard.   The Fourth Circuit has held that even a three month lapse between an employee's protected activity and termination is "too long to give rise to an inference of causality."   ECF No. 55 at 30; *see also Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. Appx. 229, 233–34 (4th Cir. 2006) (holding that "three to four months" "is too long to establish a causal connection by temporal proximity alone").

finding that a reasonable jury could conclude that "but-for" her complaint, Ms. Foster would not have been terminated.

Ms. Foster presents to the Court a "mosaic" of circumstantial evidence that she argues supports an inference that UMES developed a "retaliatory animus" after she made her complaint against Jones, and that but-for this animus, she would not have been terminated.  This evidence includes:  (1) that after her complaint, "Wright virtually stopped talking with Ms. Foster" and treated her differently than "other similarly situated employees" by refusing[4] to sign a tuition remission form; (2) her work schedule was changed a number of times to her perceived disadvantage; (3) her probationary period was extended for six months; and (4) she was not permitted to perform "light duty" work after an injury and was not permitted to attend a one day in-service training session.  She contends that these events link her complaint to her termination by demonstrating a recurring desire of UMES to retaliate against her.  UMES disputes Ms. Foster's characterizations of these activities as having any "retaliatory animus."  Instead, UMES argues that the evidence presented by Ms. Foster shows that it acted in accordance with its own policies, and did not treat Ms. Foster any differently than it had treated similarly-situated employees in the past. UMES also notes that Ms. Foster's inflexibility with respect to the scheduling needs of its "severely understaffed, small department" and her "suspicious" use of nearly all of her sick leave and personal leave, all while still on probationary status, suggested that Ms. Foster would not be a suitable permanent employee because she was not a "team player and was not a good fit for UMES."  *See* ECF No. 71-1 at 13.  Because Ms. Foster is the non-movant, the Court will draw all reasonable inferences in her favor.  *See Anderson v. Liberty*

---

[4] As Judge Grimm noted in his Memorandum Opinion, Ms. Foster "offers no evidence in support of her assertion, and Defendant denies that [Wright] ever refused to sign a tuition form." ECF No. 55 at 31 n.4.

*Lobby, Inc.*, 477 U.S. at 255 (explaining that in ruling on summary judgment motions, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Even assuming that all of Ms. Foster's factual allegations are true, and considering every reasonable inference in her favor, Ms. Foster's retaliation claim fails because she cannot establish the necessary "but-for" causal link required by *Nassar*. No reasonable jury could find that but-for Ms. Foster's complaint about Jones she would not have been terminated. While the evidence may have been sufficient to allow a reasonable jury to find a "causal link" between her complaint and her termination, it is wholly insufficient to allow a reasonable jury to find that her protected activity was the determinative reason for her termination under *Nassar*. *See Wright v. St. Vincent Health Sys.*, No. 12-3162, 2013 WL 5225214 (8th Cir. Sept. 18, 2013) (citing *Van Horn v. Best Buy Stores, L.P* ., 526 F.3d 1144, 1148 (8th Cir. 2008) ("To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative—not merely a motivating—factor' in the employer's adverse employment decision."); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) ("Appellant's proof of a causal connection between the protected activity and her discharge was that she was fired after her employer became aware that she had filed a discrimination charge. While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.").

Judge Grimm previously found that Ms. Foster's factual allegations constituted evidence "probative of causation" and could allow a reasonable jury to find that the events "could show causation." ECF No. 55 at 32 (internal quotation omitted). Even assuming that these instances are "probative of causation," Ms. Foster cannot now meet the heightened causation

standard under *Nassar*.   First, even assuming that the factual allegations in Ms. Foster's

"mosaic" of circumstantial evidence shows that UMES treated her with disfavor[5] leading up to

her termination, there is nothing to connect this unfavorable treatment to her complaint about

Jones.   UMES promptly disciplined Jones after Ms. Foster made the complaint about him.   There

is no evidence that UMES engaged in any activity that might be reasonably construed as having

a "retaliatory animus" against Ms. Foster until late August 2007 (at the end of her first six month

probation period), when her probation was extended for another six months.   Thereafter, she was

limited to "light duty" after being injured on the job, and was taken off duty entirely.   Finally,

while she was still on "light duty," UMES would not permit her to attend a one day in-service

training session.   Even if this evidence is construed in the light most favorable to Ms. Foster, no

reasonable jury could conclude that these events occurred as a result of Ms. Foster having made

a complaint about Jones, and would not have occurred otherwise.

The Court is not required to determine whether the explanation UMES previously

provided for terminating Ms. Foster is pretextual.[6]   Ms. Foster, however, is entitled to argue that

---

[5] For the purposes of this motion, the Court assumes that this is the case.   The reasonableness of this assumption, however, is dubious in light of UMES's policies that provide for (1) the extension of probation for all police officers and (2) that police officers are not permitted to work "light duty" unless a special accommodation was requested by the Worker's Compensation Insurer, which did not occur for Ms. Foster.   *See* ECF Nos. 41-3, 41-7 & 55 at 31.

[6] UMES urges that even if Ms. Foster was able to state a *prima facie* case after *Nassar*, UMES would still be entitled to summary judgment because she cannot satisfy her burden of proof to demonstrate pretext.   ECF No. 62 at 12.   *Nassar* did not address this issue.   It is difficult to understand how *Nassar*'s heightened standard of causation could apply at the pretext stage of the *McDonnell-Douglas* analysis.   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). UMES argues that Ms. Foster must proffer evidence to rebut all of UMES's stated non-retaliatory reasons for terminating her so that "but for [UMES's] alleged retaliation, it would not have discovered its alleged legitimate, nondiscriminatory reasons for terminating [her] employment."   *See Nicholson v. City of Clarksville, Tenn.*, No. 12-6318, 2013 WL 3746098 (6th Cir. July 17, 2013); ECF No. 62 at 14.   At least two district courts in this Circuit have addressed the issue of pretext without applying *Nassar*'s heightened causation standard to the analysis.   *See Lindquist v. Tanner*, No. 2:11-3181-RMG, 2013 WL 4441946 (D.S.C. Aug. 15, 2013) ("Though

UMES's stated reasons for her termination are pretextual, and to rely on this as evidence to show causation. Nonetheless, "[t]he ultimate question is whether the employer intentionally [retaliated], and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Scott v. Montgomery Cnty. Sch. Bd.*, No. 7:08CV000645, 2013 WL 4012039 (W.D. Va. Aug. 5, 2013) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000)). "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of [retaliation]." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993). Even in a light favorable to Ms. Foster, UMES's explanation for her termination, considered together with all of the other evidence she presents, fails to establish a "but-for" causal link between her complaint and termination. The evidence of pretext Ms. Foster presents consists largely of the opinions of other employees at UMES that she was a good employee. While these opinions might discredit UMES's explanation for Ms. Foster's termination, they do nothing to support the theory she alleged in Count II: that she was terminated for complaining about Jones. A reasonable jury might disbelieve UMES's stated reasons for terminating her, but no reasonable jury could believe that but-for Ms. Foster's complaint, she would not have been terminated.

---

the Commission has offered legitimate nondiscriminatory reasons for Plaintiff's firing, such as seasonal fluctuations in business at the site where Plaintiff worked, the evidence presented by Plaintiff has nevertheless created a question of fact as to whether those reasons were a pretext for retaliation."); *Black v. Shinseki*, No. 3:11-0675, 2013 WL 4779020 (S.D.W. Va. Sept. 5, 2013) ("Even assuming that the Plaintiff has provided sufficient evidence to make a prima facie case, however, he has not succeeded in offering sufficient evidence to rebut Defendant's proffered legitimate reason for terminating him—namely, Plaintiff's poor work performance—or to rebut any other reasons given for Defendant's employment actions."). In any event, the Court does not need to address this issue. Because Ms. Foster was unable to state a *prima facie* case of retaliation, the Court is not required to analyze UMES's explanation of its non-retaliatory reasons for her termination and Ms. Foster's rebuttal of this explanation as deceitful and pretextual.

Under the facts of this case, Ms. Foster's retaliation claim simply cannot survive summary judgment after *Nassar*.

## IV.    CONCLUSION

Accordingly, the Court finds that no reasonable juror could determine that Ms. Foster's termination would not have occurred if she had not complained of Jones's conduct.  Thus, Ms. Foster fails to establish a *prima facie* case as to her retaliation claim, and UMES is entitled to judgment as a matter of law on this claim.   UMES's Motion for Summary Judgment is GRANTED as to Count II, "Retaliatory Harassment and Termination for Activities Protected by Title VII."  An order implementing this decision shall issue separately.


Date:   September 27, 2013                          _____/s/_____

                                                    Timothy J. Sullivan
                                                    United States Magistrate Judge