FILED: May 21, 2015

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1073
(1:10-cv-01933-TJS)

IRIS FOSTER

      Plaintiff - Appellant

v.

UNIVERSITY OF MARYLAND EASTERN SHORE

      Defendant - Appellee

------------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS
ASSOCIATION

      Amicus Supporting Appellant

JUDGMENT

In accordance with the decision of this court, the judgment of the district court is affirmed in part and reversed in part. This case is remanded to the district court for further proceedings consistent with the court's decision.

This judgment shall take effect upon issuance of this court's mandate in

accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1073

IRIS FOSTER,

        Plaintiff - Appellant,

    v.

UNIVERSITY OF MARYLAND-EASTERN SHORE,

        Defendant - Appellee.

------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION,

        Amicus Supporting Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Paul W. Grimm, Magistrate Judge;
Timothy J. Sullivan, Magistrate Judge.   (1:10-cv-01933-TJS)

Argued:  January 27, 2015        Decided:  May 21, 2015

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published
opinion. Judge Floyd wrote the opinion, in which Judge Keenan
and Judge Wynn joined.

**ARGUED:** Leizer Z. Goldsmith, THE GOLDSMITH LAW FIRM, LLC,
Washington, D.C., for Appellant.  Carl N. Zacarias, OFFICE OF
THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for
Appellee.  **ON BRIEF:**  Douglas F. Gansler, Attorney General of

Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore,
Maryland, for Appellee.   Richard R. Renner, KALIJARVI, CHUZI,
NEWMAN & FITCH, P.C., Washington, D.C.; Denise M. Clark, CLARK
LAW GROUP, PLLC, Washington, D.C.; Ellen K. Renaud, SWICK &
SHAPIRO, Washington, D.C., for Amicus Curiae.

———————————

2

FLOYD, Circuit Judge:

This appeal concerns the effect of the Supreme Court's decision in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), on what Title VII retaliation plaintiffs must show to survive a motion for summary judgment. In Nassar, the Court held that a successful retaliation plaintiff must prove that retaliatory animus was a but-for cause of the challenged adverse employment action, eliminating mixed-motive liability under the "lessened" motivating factor test. However, the Nassar Court was silent as to the application of but-for causation in McDonnell Douglas pretext cases.  Because we conclude that Nassar did not alter the McDonnell Douglas analysis for retaliation claims, we reverse in part the district court's grant of summary judgment.

I.

On March 12, 2007, Plaintiff-Appellant Iris Foster was hired by Defendant-Appellee the University of Maryland-Eastern Shore (the University) as a campus police officer.[1]   Her

---

[1] In reviewing de novo the district court's order granting summary judgment to the University, we "view the facts and all justifiable inferences arising therefrom in the light most favorable to" Foster, as the nonmoving party.  Libertarian Party of Va. v. Judd, 718 F.3d 308, 312 (4th Cir. 2013).   The following statement of facts conforms to this standard.

appointment was subject to a standard six-month probationary
period, during which she was essentially an at-will employee.
The campus police department was supervised by Lawrence Wright:
Rudolph Jones, one of Foster's new coworkers, supervised the
campus security guards and reported directly to Wright.   Foster
and Jones worked in the same building.

     According to Foster's uncontradicted evidence, Jones began
sexually harassing Foster before she even started work: He spied
on her while she was being fitted for her new uniform in a state
of partial undress.   The harassment continued during Foster's
first month on the job.   Among other things, Jones stared at
her, made lewd or suggestive comments about her, kissed and
pinched her on the cheek, and pressed his groin against her
buttocks while laying his arm across her breasts.

     A month after the harassment began, Foster notified her
superiors about Jones's inappropriate sexual conduct.   First,
she spoke to Wright, who tried to resolve the matter informally
by meeting with Foster and Jones that same day.   Foster then
told the University's Director of Human Resources, Marie Billie,
that Jones had sexually harassed her, and later sent Billie a
written complaint detailing Jones's harassment.

     Billie investigated Foster's allegations and concluded that
Jones had acted inappropriately.   She therefore recommended to
the University's Vice President for Administrative Affairs,

4

Ronnie Holden, that he discipline Jones.    Among other things,
Billie recommended that Holden transfer Jones away from his role
as supervisor of campus security guards, require him to take
sexual harassment training, and require him to sign a "Last
Chance Agreement" putting him on notice that he would be
immediately terminated upon any further violation of University
policy.   Holden immediately adopted Billie's recommendations and
punished Jones accordingly.[2]

According to Foster, however, she was also punished by the
University for complaining about Jones.    A few weeks before
Foster's probationary period was to end, Wright extended her
probation by an additional six months.    Although the department
regularly extended the probation of all new hires pursuant to
University policy, Foster claims that her probation was extended
in retaliation for her complaints.    Foster further claims that
the University retaliated against her over the next several
months by changing her schedule without notice, denying her
tuition remission, denying her light duty following an injury,
and barring her from attending a training session while she was
on injury leave.    During this time, Foster complained repeatedly

---

[2] Foster does not allege that Jones engaged in any further
sexual harassment after he was disciplined.

5

to Wright and Billie about the perceived incidents of
retaliation.

Less than a month after Foster's last complaint, Wright
recommended Foster for termination.[3] Billie and Holden reviewed
Wright's recommendation and ultimately agreed that Foster should
be fired. Holden notified Foster of her termination on October
29, 2007, in a letter that did not explain the reasons for
Foster's termination.

During the course of this litigation, Billie and Holden
have provided several justifications for firing Foster. They
observed that Foster had used almost all of her personal and
sick leave for the year in relatively short time; that she was
inflexible when asked to come in early or stay past the end of
her scheduled shift; and that she was not a team player. They
also allegedly observed that Foster had been disciplined by
Wright for moving a table into a police holding cell without
permission—purportedly threatening officer safety—and for
revising certain interoffice forms.[4]

---

[3] Because Foster was still on probation, she was technically
"rejected on probation." J.A. 124, 1049. For the sake of
clarity, we refer to this rejection as a termination.

[4] Foster and one of her coworkers testified that Foster
edited the forms at Wright's request and that Wright praised the
work. Wright issued a written reprimand to Foster regarding the
forms on June 4, 2014—two months after Foster edited the forms,
and one day before Billie disciplined Jones.

6

In her deposition, Billie candidly offered an additional reason for terminating Foster: "everything that ever happened [Foster] attributed to the sexual harassment complaint," and she "couldn't move on" or "get past [the harassment]." J.A. 323-24. Billie believed that Foster was fixated on her harassment experience and became preoccupied with it.  She agreed that Foster was an "unacceptable fit" for the position of police officer because she complained too often about perceived retaliation. J.A. 323.

Foster appealed her termination, first through the University System of Maryland Grievance Procedure and then before the state Office of Administrative Hearings. A Maryland Administrative Law Judge rejected her appeal. Foster then filed a complaint with the Equal Employment Opportunity Commission (EEOC), which found insufficient evidence to support her complaint and issued a right-to-sue letter. Foster subsequently initiated this suit. Her complaint alleges three causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.: discriminatory termination based on gender, retaliatory termination, and the creation of a hostile work environment.

The district court granted the University summary judgment on the discriminatory termination and hostile work environment claims, but denied summary judgment on the retaliation claim.

7

After working through the McDonnell Douglas framework, it held that (1) "a reasonable jury could find that [the] instances in which Defendant made it more difficult for Plaintiff to work and attend training" demonstrated retaliatory animus that was "causally related" to her termination, J.A. 1070, and (2) "a reasonable jury could conclude that the proffered reasons for termination were pretextual," J.A. 1075 (internal quotations and brackets omitted).

The University filed a motion for reconsideration in light of the Supreme Court's intervening decision in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), which clarified the causation standard for Title VII retaliation claims. The district court[5] granted the University's motion for reconsideration and motion for summary judgment, this time determining that summary judgment was warranted on Foster's retaliation claim under the causation standard articulated in Nassar. The court concluded that, under the new Nassar standard, Foster could no longer satisfy the elements of a prima

---

[5] The University's summary judgment motion was first decided by Magistrate Judge Paul Grimm, to whom the case had been referred for all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and with the parties' consent. Before the University filed its motion for reconsideration, Magistrate Judge Grimm was confirmed as a United States District Judge, and the case was reassigned to Magistrate Judge Timothy Sullivan.

facie case: "While the evidence may have been sufficient to allow a reasonable jury to find a 'causal link' between her complaint and her termination, it is wholly insufficient to allow a reasonable jury to find that her protected activity was the determinative reason for her termination under Nassar." J.A. 1166.

Foster timely appealed the grant of summary judgment as to all three claims.   We have jurisdiction over final judgments of the district court pursuant to 28 U.S.C. § 1291.


II.

We review a grant of summary judgment de novo.   Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996).   "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"   Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).   "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."   Libertarian Party of Va., 718 F.3d at 313 (internal quotation marks omitted).   "A fact is material if it 'might affect the outcome of the suit under the governing law.'"   Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   "We are required to view the facts and all justifiable inferences arising therefrom in the light

most favorable to the nonmoving party . . . ." Id. at 312. In doing so, we must not weigh evidence or make credibility determinations. Mercantile Peninsula Bank v. French, 499 F.3d 345, 352 (4th Cir. 2007). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam).

### III.

To determine whether Foster's retaliation claim survives the University's summary judgment motion, we must first determine how Nassar affects a Title VII retaliation plaintiff's burden at the summary judgment stage. We conclude that the McDonnell Douglas framework, which already incorporates a but-for causation analysis, provides the appropriate standard for reviewing Foster's claim.

### A.

Title VII prohibits an employer from both (i) discriminating against an employee on the basis of sex, and (ii) retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Plaintiffs may prove these violations either through direct and indirect evidence of retaliatory animus, or

10

through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). We have also referred to these two "avenues of proof" as the "mixed-motive" framework and the "pretext" framework, respectively. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc). It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by mean of the McDonnell Douglas burden-shifting framework. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 n.4 (4th Cir. 2005) ("In the event that a plaintiff has direct evidence of discrimination or simply prefers to proceed without the benefit of the burden-shifting framework, she is under no obligation to make out a prima facie case.").

Historically, we have considered Title VII retaliation claims under the same standard as discrimination claims. See, e.g., Price, 380 F.3d at 212 (analyzing a retaliation claim under the pretext framework); Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 546 (4th Cir. 1999) (analyzing a retaliation claim under the mixed-motive framework). In light of the Supreme Court's recent decision in Nassar, however, that no longer holds true. Previously, a retaliation plaintiff only needed to show that his or her "employer was motivated to take the adverse employment action by both permissible and forbidden reasons."

11

<u>Hill</u>, 354 F.3d at 284 (citing 42 U.S.C. § 2000e-2(m)).  So long
as retaliatory animus was a motivating factor of the adverse
employment action, the employee could recover—even if the
employer would have taken the same adverse employment action in
the absence of such animus.  <u>Id.</u>

In <u>Nassar</u>, however, the Supreme Court held that the
lessened causation standard of § 2000e-2(m) does not apply to
retaliation claims.  133 S. Ct. at 2533.  Unlike discrimination
plaintiffs, retaliation plaintiffs are limited to "traditional
principles of but-for causation" and must be able to prove that
"the unlawful retaliation would not have occurred in the absence
of the alleged wrongful action or actions of the employer."  <u>Id.</u>

Clearly, <u>Nassar</u> significantly altered the causation
standard for claims based on direct evidence of retaliatory
animus by rejecting the "mixed motive" theory of liability for
retaliation claims.[6]  <u>Cf. Harris v. Powhatan Cnty. Sch. Bd.</u>, 543
F. App'x 343, 346 (4th Cir. 2013) (noting that the Supreme Court
in <u>Gross v. FBL Fin. Serv. Inc.</u>, 557 U.S. 167 (2009), an
analogous case upon which the <u>Nassar</u> court relied heavily,

---

[6] Retaliation plaintiffs may still proceed by direct and
indirect evidence, but in our experience it is the rare case in
which an employer admits not just to possessing an impermissible
motive, but also to acting upon it.

12

eliminated mixed-motive liability under the ADEA).[7]   However,
Foster does not claim to proceed by direct evidence.[8]   Rather,
she proceeds under the pretext framework, which Nassar does not
purport to address.  We must therefore decide what effect, if
any, Nassar has on a retaliation plaintiff's burden under the
McDonnell Douglas framework.


                              B.

    The McDonnell Douglas framework is a three-step burden-
shifting framework used by Title VII plaintiffs who lack direct
evidence of retaliatory discrimination.   Diamond, 416 F.3d at
318.  To prevail under the McDonnell Douglas framework, Foster
must first establish a prima facie case by showing: (i) "that
[she] engaged in protected activity," (ii) "that [her employer]
took adverse action against [her]," and (iii) "that a causal
relationship existed between the protected activity and the
adverse employment activity."   Price, 380 F.3d at 212.   The

---

    [7] Because Nassar is functionally an extension of Gross, see
133 S. Ct. at 2523, our cases applying Gross prove instructive
here.

    [8] Foster's opening brief limits its discussion of direct
evidence to an isolated footnote, Appellant's Br. at 54 n.41,
and we therefore conclude that she has waived this argument on
appeal.  See Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d
599, 607 (4th Cir. 2009) (finding that an argument raised only
in a footnote in appellant's opening brief was waived on
appeal).

burden then shifts to the University to show that its
purportedly retaliatory action was in fact the result of a
legitimate non-retaliatory reason. Hill, 354 F.3d at 285. If
the employer makes this showing, the burden shifts back to the
plaintiff to rebut the employer's evidence by demonstrating that
the employer's purported nonretaliatory reasons "were not its
true reasons, but were a pretext for discrimination." Id.
(quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.
133, 143 (2000)); see also Merritt v. Old Dominion Freight Line,
Inc., 601 F.3d 289, 295 (4th Cir. 2010). In this way, a
plaintiff is able to prove causation even without direct
evidence of retaliatory animus: If a plaintiff can show that she
was fired under suspicious circumstances and that her employer
lied about its reasons for firing her, the factfinder may infer
that the employer's undisclosed retaliatory animus was the
actual cause of her termination. Reeves, 530 U.S. at 148 ("[A]
plaintiff's prima facie case, combined with sufficient evidence
to find that the employer's asserted justification is false, may
permit the trier of fact to conclude that the employer
unlawfully discriminated.").

Thus, Foster must establish causation at two different
stages of the McDonnell Douglas framework: first, in making a
prima facie case, and second, in proving pretext and satisfying

14

her  ultimate  burden  of  persuasion.  We  consider  the
applicability of Nassar to each causation requirement in turn.

1.

Nassar involved a post-judgment motion for judgment as a
matter of law in a mixed-motive case, and therefore did not
address the elements of a prima facie case of retaliation under
the pretext framework.  133 S. Ct. at 2524.[9]  Our sister circuits
disagree as to whether Nassar has any bearing on the causation
prong of the prima facie case.[10]  For the reasons that follow, we
conclude that it does not.[11]

---

[9] See also Nassar v. Univ. of Tex. Sw. Med. Ctr., 674 F.3d
448, 454 (5th Cir. 2012) ("It goes without saying that, when a
race-discrimination claim has been fully tried, as has this one,
this court need not parse the evidence into discrete segments
corresponding to a prima facie case, an articulation of a
legitimate, nondiscriminatory reason for the employer's
decision, and a showing of pretext." (quoting DeCorte v. Jordan,
497 F.3d 433, 437-38 (5th Cir. 2007))), rev'd, 133 S. Ct. 2517
(2013).

[10] The law in our sister circuits is muddled.  Some courts
require evidence of but-for causation in order to establish a
prima facie case.  See EEOC v. Ford Motor Co., No. 12-2484, 2015
WL 1600305 at *14 (6th Cir. Apr. 10, 2015); Ward v. Jewell, 772
F.3d 1199, 1203 (10th Cir. 2014); Beard v. AAA of Mich., 593 F.
App'x 447, 451 (6th Cir. 2014); Smith v. City of Fort Pierce,
Fla., 565 F. App'x 774, 778-79 (11th Cir. 2014) (per curiam).
Other courts have held, either expressly or implicitly, that
Nassar did not alter the elements of a prima facie case.  See
Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 507
(6th Cir. 2014); Butterworth v. Lab. Corp. of Am. Holdings, 581
F. App'x 813, 817 (11th Cir. 2014) (per curiam); Hague v. Univ.
of Tex. Health Sci. Ctr. at San Antonio, 560 F. App'x 328, 336
(Continued)

15

As an initial matter, the causation standards for
establishing a prima facie retaliation case and proving pretext
are not identical. Rather, the burden for establishing
causation at the prima facie stage is "less onerous." Williams
v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).
Adopting the contrary rule (and applying the ultimate causation
standard at the prima facie stage) would be tantamount to
eliminating the McDonnell Douglas framework in retaliation cases
by restricting the use of pretext evidence to those plaintiffs
who do not need it: If plaintiffs can prove but-for causation
at the prima facie stage, they will necessarily be able to

---

(5th Cir. 2014); Feist v. La. Dep't of Justice, Office of the
Att'y Gen., 730 F.3d 450, 454 (5th Cir. 2013); Kwan v. Andalex
Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013).

[11] In a recent published opinion, a panel of this Court
stated the causation prong of the prima facie case as: "(3) that
the protected activity was a 'but-for' cause of [Plaintiff's]
termination and not simply a 'motivating factor.'" Walker v.
Mod-U-Kraf Homes, LLC, 775 F.3d 202, 210 (4th Cir. 2014) (citing
Hill, 354 F.3d at 285). The Walker court assumed that the
plaintiff had established a prima facie case, and therefore did
not apply its proposed test. The court also gave no indication
that its proposed change to the prima facie case resulted from a
construction of Nassar. Language in a published opinion that is
"unrelated to the ratio decidendi of [the] case" is properly
regarded as dictum rather than binding precedent. United States
v. Shepperson, 739 F.3d 176, 180 n.2 (4th Cir. 2014). For the
reasons that follow, we are unpersuaded that the Walker dictum
reflects the best reading of Nassar and decline to adopt its
restatement of the prima facie case.

16

satisfy their ultimate burden of persuasion without proceeding through the pretext analysis. Conversely, plaintiffs who cannot satisfy their ultimate burden of persuasion without the support of pretext evidence would never be permitted past the prima facie stage to reach the pretext stage.[12] Had the Nassar Court intended to retire McDonnell Douglas and set aside 40 years of precedent, it would have spoken plainly and clearly to that effect. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007) (stating that the Conley pleading standard "has earned its retirement" and "is best forgotten"). But it did not do so. We therefore hold that Nassar does not alter the causation prong of a prima facie case of retaliation.[13]

---

[12] The district court on reconsideration acknowledged that retaliation plaintiffs proceeding under McDonnell Douglas will need "to rely on [pretext] as evidence to show causation." J.A. 1167-68. Nevertheless, the court held that it would not "determine whether the explanation [the University] previously provided for terminating Ms. Foster [was] pretextual" because Foster had failed to establish the causation prong of the prima facie case (without the use of pretext evidence). Id. We decline to impose such a Catch-22 on retaliation plaintiffs.

[13] This finding accords with our prior unpublished opinions concluding that the but-for causation standard for ADEA claims articulated by the Supreme Court in Gross does not apply at the prima facie stage. See, e.g., Arthur v. Pet Dairy, 593 F. App'x 211, 217 n.4 (4th Cir. 2015) (per curiam) (noting that an a plaintiff who makes out a prima facie case of ADEA discrimination must still prove "that his age was the but-for cause of his termination"); Harris, 543 F. App'x at 346-47; Billingslea v. Astrue, 502 F. App'x 300, 302 (4th Cir. 2012) (per curiam); Tuttle v. McHugh, 457 F. App'x 234, 237 (4th Cir. 2011) (per curiam).

17

2.

We next consider whether Nassar alters the pretext stage of
the McDonnell Douglas framework.  Because the pretext framework
already requires plaintiffs to prove that retaliation was the
actual reason for the challenged employment action, we conclude
that it does not.

A  plaintiff  who  establishes  a  prima  facie  case  of
retaliation bears the "ultimate burden of persuading the court
that [she] has been the victim of intentional [retaliation]."
Hill, 354 F.3d at 285 (quoting Tex. Dep't of Cmty. Affairs v.
Burdine, 450 U.S. 248, 256 (1981)); see also Merritt, 601 F.3d
at 294-95 (identifying the "ultimate question" in any Title VII
case under either framework as "discrimination vel non" (quoting
U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714
(1983))).   In order to carry this burden, a plaintiff must
establish "both that the [employer's] reason was false and that
[retaliation] was the real reason for the challenged conduct."
Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir.
1995) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515
(1993)).

Nassar's but-for causation standard is not the "heightened
causation standard" described by the district court, J.A. 1166-
67, and does not demand anything beyond what is already required

18

by the McDonnell Douglas "real reason" standard.[14]  A plaintiff
who can show that retaliation "was the real reason for the
[adverse employment action]," Holland v. Wash. Homes, Inc., 487
F.3d 208, 218 (4th Cir. 2007), will necessarily be able "to show
that the harm would not have occurred in the absence of—that is,
but for—the defendant's conduct," Nassar, 133 S. Ct. at 2525
(internal quotation marks and citation omitted).   In other
words, the statements "the real reason for Foster's termination
was her employer's retaliation" and "Foster would not have been
terminated but for her employer's retaliatory animus" are
functionally equivalent.

    We conclude, therefore, that the McDonnell Douglas
framework has long demanded proof at the pretext stage that
retaliation was a but-for cause of a challenged adverse
employment action. Nassar does not alter the legal standard for
adjudicating a McDonnell Douglas retaliation claim.[15]

---

    [14] In the early days of McDonnell Douglas and before the
advent of the mixed-motive framework, we stated clearly that the
pretext stage requires proof of but-for causation.   Ross v.
Commc'ns Satellite Corp., 759 F.2d 355, 365–66 (4th Cir. 1985)
("For the employee to disprove a legitimate nondiscriminatory
explanation for adverse action, the third stage of the Burdine
analysis, we determine that he must show that the adverse action
would not have occurred 'but for' the protected conduct."),
abrogated by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

    [15] The Fifth Circuit has reached the same conclusion. See,
e.g., Feist, 730 F.3d at 454 ("'After the employer states its
reason, the burden shifts back to the employee to demonstrate
(Continued)

C.

Having clarified the proper legal standard for assessing a Title VII retaliation claim in light of Nassar, we turn to the University's motion for summary judgment. In its initial, well-reasoned decision, the district court concluded that Foster's evidence was "sufficient to generate a jury question on pretext." J.A. 1075. We agree.

We first consider whether Foster established a prima facie case of retaliation. To establish a prima facie case, Foster must show "that [s]he engaged in protected activity, that [the University] took adverse action against [her], and that a causal relationship existed between the protected activity and the adverse employment activity." Price, 380 F.3d at 212. Only the causation prong is disputed on appeal.

---

that the employer's reason is actually a pretext for retaliation,' which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive . . . ." (internal citations omitted) (citing Nassar, 133 S. Ct. at 2533)); Hague, 560 F. App'x at 336 ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action.") (citing Nassar, 133 S. Ct. at 2533-34); see also Scrivener v. Socorro Ind. Sch. Dist., 169 F.3d 969, 972 (5th Cir. 1999) ("To carry her ultimate Title VII burden, an employee must also show that her employer would not have taken the adverse employment action 'but for' the employee's participation in the protected activity.").

Foster argues that she can show causation by means of (i) Billie's statement of retaliatory animus; (ii) the temporal proximity between Foster's final complaint of retaliation and her termination; and (iii) the additional retaliatory acts that preceded her firing. Billie's statement that Foster was fired because "everything that ever happened she [Foster] attributed to the sexual harassment complaint," J.A. 323, suggests that Billie and Holden fired Foster because she complained about retaliation. Foster's evidence of temporal proximity also tends to show causation: according to her uncontradicted testimony, she complained to Billie about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated.[16]  See King v. Rumsfeld, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (finding that a two-and-a-half month gap between protected activity and an adverse employment action was sufficiently narrow to establish the causation prong of the prima facie case solely on the basis of temporal proximity). Taken together, this evidence is

---

[16] The University argues that, in considering temporal proximity, we may only look to Foster's initial complaint of harassment and not her subsequent complaints of retaliation. This is plainly contrary to law. See, e.g., Carter v. Bell, 33 F.3d 450, 460 (4th Cir. 1994) (finding temporal proximity where an employee was demoted six weeks after a hearing on his EEO complaint).

sufficient to create a jury question regarding the causation
prong of the prima facie case.[17]

Because Foster concedes that the University has proffered
evidence of a legitimate, non-retaliatory reason for her
termination, we proceed to the pretext stage of the McDonnell
Douglas inquiry. The University claims to have fired Foster
because she used too much leave time, was inflexible and
unwilling to accommodate changes to her schedule, and moved
furniture and edited office forms without permission. Foster
argues that the University's proffered non-retaliatory reasons
are pretextual because: (i) Foster's immediate supervisor and
the department scheduler both testified that Foster was not
inflexible in scheduling; (ii) Wright testified that there was
no documentation of Foster's supposed inflexibility in her
personnel file; (iii) Foster's immediate supervisor testified
that Foster had been given permission to edit the office forms
and that Wright had initially praised her work; (iv) Foster's
immediate supervisor repeatedly praised her work and discussed
promoting her to corporal before she made her sexual harassment

---

[17] Even if this evidence were insufficient, when considered
together with Foster's evidence of the University's additional
retaliatory acts—specifically, the denial of light duty and the
denial of training—it would suffice to create a jury question
regarding causation.

complaint; and (v) the University did not initially provide Foster with a reason for her termination.[18]

From this evidence, the district court concluded that Foster "render[ed] the employer's reason so questionable as to raise an inference of deceit." J.A. 1075 (citation omitted). We agree. A reasonable jury could conclude from Foster's evidence that the University's proffered justifications were not its real reasons for firing her. A reasonable jury could further conclude—as required by Reeves and Nassar—that the University's actual reason for firing Foster was to retaliate against her for complaining about Jones's alleged sexual harassment and for her subsequent complaints of ongoing retaliation. We therefore find that summary judgment in favor of the University is not warranted on Foster's retaliation claim.

IV.

Foster also appeals the district court's grant of summary judgment on her gender-based discrimination and hostile work

---

[18] We note with some frustration that in setting out this evidence of pretext, Foster's counsel failed to comply with Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure, which requires that briefs contain "citations to the . . . parts of the record on which the appellant relies." Counsel is admonished to show greater respect for both his client's interests and the Court's time in his future appearances before this Court.

23

environment claims, which were not at issue in the University's motion for reconsideration. We consider each claim in turn.

A.

The district court found that Foster failed to make out a prima facie case of gender-based discriminatory discharge because she failed to show that she was replaced by a male police officer with comparable qualifications. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (noting "comparable qualifications" element of prima facie case). Although her replacement was male, the undisputed evidence shows that he was better qualified for the position. Foster concedes this point, but argues that we should bypass our precedent and instead adopt the approach of the Sixth Circuit, which does not impose a comparable qualifications requirement. This argument—which she raises for the first time on the last page of her reply brief and is, in any event, waived—is unavailing. See McMellon v. United States, 387 F.3d 329, 332 (4th Cir. 2004) (en banc) (affirming "the basic principle that one panel cannot overrule a decision issued by another panel"). We therefore affirm the district court's grant of summary judgment on Foster's gender-based discrimination claim.

24

B.

The district court also correctly granted summary judgment on Foster's hostile work environment claim. "In order to make out a hostile work environment claim based on sex, 'a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 331 (4th Cir. 2011) (citation omitted). The district court found that Foster established a genuine dispute of material fact on the first, second, and third elements, but granted summary judgment to the University because no reasonable jury could find that Jones's alleged harassment was imputable to his employer.

Sexual harassment is imputable to an employer when the employer "knew or should have known about the harassment and failed to take effective action to stop it." Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006) (citation and internal quotation marks omitted). It is undisputed that the University promptly investigated Foster's complaint and, within 30 days, transferred Jones to a position where he would no longer interact with Foster and required him to attend counseling and sign a "Last Chance Agreement." J.A. 1059. It is also undisputed that Foster was not sexually harassed after

25

complaining to the University about Jones's harassment.  From these undisputed facts, we affirm the district court's conclusion that the University took effective action to stop Jones's harassment of Foster, and that Jones's actions are not imputable to the University under this theory.  See EEOC v. Xerxes Corp., 639 F.3d 658, 670 (4th Cir. 2011) ("A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." (quoting Knabe v. Boury Corp., 114 F.3d 407, 411-12 n.8 (3d Cir. 1997))).

Foster argues that she can still prevail because the University "should have known" about Jones's harassment and should have stopped it preemptively because a previous employee—described in the record as Employee C—also complained that Jones had sexually harassed her.  As we have previously held, an "employer's knowledge that a male worker has previously harassed female employees other than the plaintiff will often prove highly relevant in deciding whether the employer should have anticipated that the plaintiff too would become a victim of the male employee's harassing conduct."  Paroline v. Unisys Corp., 879 F.2d 100, 107 (4th Cir. 1989), rev'd in part on other grounds, 900 F.2d 27, 28 (4th Cir. 1990) (per curiam) (en banc).

Here, as evidence that the University was on notice of Jones's past harassment of Employee C, Foster has produced Employee C's deposition, Employee C's complaint filed with the

26

Maryland    Commission    on    Human    Relations    (MCHR),    Billie's
testimony that there had been other sexual harassment claims
against Jones (including Employee C's), and Holden's testimony
that    Employee    C    had    filed    an    MCHR    complaint    against    the
University arising from alleged harassment by Jones.    In
response, the University argues that this Circuit does not
recognize such a theory of liability and that even if it did,
the University was not on notice of Jones's propensity for
engaging in sexual harassment because both its internal
investigation and the MCHR investigation concluded that Employee
C's complaint was without merit.

     Contrary to the University's argument, the rule we
articulated in Paroline remains good law in this Circuit.    We
take this opportunity to reaffirm its holding: employers have an
affirmative duty to prevent sexual harassment, and will be
liable    if    they    "anticipated    or    reasonably    should    have
anticipated" that a particular employee would sexually harass a
particular coworker and yet "failed to take action reasonably
calculated to prevent such harassment."    Paroline, 879 F.2d at
107 (emphasis added); see also Mikels v. City of Durham, 183
F.3d 323, 331 (4th Cir. 1999) (noting that in Paroline,
liability arose because "the employer was already on notice
 . . . of the harasser's propensities").    The question, then, is
whether the University reasonably should have anticipated that

                                   27

Jones would harass Foster in light of Employee C's prior complaints of harassment.

In Paroline, the plaintiff produced evidence that her employer had failed to investigate prior complaints that the man who harassed her had engaged in unwanted touching of other women in the office. 879 F.2d at 103. Here, however, Foster concedes that the University investigated Employee C's allegations and found them to lack credibility. Moreover, according to Holden's uncontradicted testimony, the MHCR also investigated Employee C's allegations and similarly returned a finding of "no probable cause."[19] J.A. 563-64. We conclude as a matter of law that, for purposes of the Paroline failure-to-warn theory, an employer may reasonably rely upon the findings of a state civil rights agency in determining whether an employee poses a risk of creating a hostile work environment. To hold otherwise would effectively

---

[19] The MCHR decision was not included in the record below, and we therefore cannot rule out the possibility that Holden's testimony mischaracterizes its contents. But because Foster failed to present any evidence that would controvert Holden's testimony, we are compelled by Rule 56 to accept the University's evidence as true. See 10A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2727 (3d ed. 1998) ("If the movant presents credible evidence that, if not controverted at trial, would entitle him to a Rule 50 judgment as a matter of law that evidence must be accepted as true on a summary-judgment motion when the party opposing the motion does not offer counter-affidavits or other evidentiary material supporting the opposing contention that an issue of fact remains . . . .").

require employers to discipline or terminate all employees
accused of harassment, regardless of whether the accusations
against them are supported by evidence.  This we decline to do.

Viewing the evidence in the light most favorable to Foster,
she has failed to create a jury question regarding whether the
University reasonably should have anticipated that she would be
the victim of Jones's sexual harassment.    The harassment is
therefore not imputable to the University, and so we affirm the
district court's grant of summary judgment on Foster's hostile
work environment claim.

V.

For the foregoing reasons, we reverse in part the district
court's order granting summary judgment to the University and
remand to the district court for further proceedings consistent
with this opinion.

                                          AFFIRMED IN PART,
                                          REVERSED IN PART,
                                          AND REMANDED

FILED: May 21, 2015

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No.  14-1073,     Iris Foster v. University of Maryland Eastern
                  1:10-cv-01933-TJS

---

NOTICE OF JUDGMENT

---

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. (www.supremecourt.gov)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers are sent to counsel appointed or assigned by the court in a separate transmission at the time judgment is entered. CJA 30 vouchers are sent to counsel in capital cases. CJA 20 vouchers are sent to counsel in criminal, post-judgment, habeas, and § 2255 cases. Assigned counsel vouchers are sent to counsel in civil, civil rights, and agency cases. Vouchers should be completed and returned within 60 days of the later of entry of judgment, denial of a petition for rehearing, or the grant or denial of a petition for writ of certiorari. If counsel appointed or assigned by the court did not receive a voucher, forms and instructions are available from the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition to identify the cases to which the petition applies and to avoid companion cases proceeding to mandate during the pendency of a petition for rehearing in the lead case. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 15 pages. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).